Okay, Mr. Potipoff. May it please the Court, Alex Potipoff for the State of Texas. The EEOC formally adopted a lengthy and detailed rule concerning the use of criminal records in employment decisions. The rule is judicially reviewable because it demands compliance from employers, binds the EEOC staff, and purports to preempt contrary state law. I'd like to begin with the question of final agency action. Under Bennett v. Speer, there's a two-prong test for finality. The more important first prong concerns whether or not the action at issue represents the consummation of the agency's decision-making process. In this case, the EEOC does not contest that the rule is the consummation of their decision-making process. So the only question is the second prong of the Bennett inquiry, which is whether or not the rule has legal consequences. And this is a practical inquiry, which focuses not necessarily on whether the rule, the words of the rule have force of law in and of themselves, but rather on whether it is meant to have a practical impact in the field, whether it's meant to be controlling in effect. All right. Now, the EEOC does have subpoena enforcement powers. Is that correct? I believe that's correct. And they have it against the State of Texas. In other words, they can investigate the State of Texas' alleged unfair employment practices. They just cannot sue them in federal court. Is that the limitation? That is correct. They can investigate us. So here, I mean, if you refuse to turn over information with respect to the felony records of the agency that they were investigating or whatever the case was in that respect, they could go to court and enforce a subpoena. And at that point, if the court sided with them, they could force you to turn over your records for purposes of investigation. Your Honor, I'm not certain what their investigation powers are with respect to the subpoena power. I'm not aware of what the— Well, I mean, it seems to me that's crucially the case. How would you know that? Well, we would say that it's not merely the fact that they have the power to investigate us, but they also have the power to take us to the conciliation process, which in and of itself can be difficult and coercive. Well, they can't investigate you if you don't furnish them any information. They can't conciliate if they ain't got any information. So they have to have investigative powers. And if they've got investigative powers, they've got to have subpoena powers. I believe that's correct, Your Honor. Well, I'd say that's crucially the case. Well, they don't have—that's the announcement, nothing but their view of the law. Until they persuade a court of that, that's— Well— I mean, I guess I don't really understand where you're coming from. Well, so that— The one they can't announce, they cannot do substantive rulemaking. We know that, right? You agree with that? That is true. All right. So at best, you're talking about an announcement of some sort of normative standard that they want, they hope, to persuade some court of. It does not have the force of law. And at least one circuit, the D.C. Circuit, has made that pretty clear. Well, but, Your Honor, the D.C. Circuit has also issued a variety of cases like Barrick and Appalachian Power, which all concern rules like this one, which are called mere guidances and which are not published in the Federal Register. And the reason that those are treated as final action is because they control what the agents are doing in the field. How are you hurt by the existence of this rule, this opinion of the EEOC? It's got an opinion that they ought to be able to enforce through the mechanism of the Civil Rights Act the adverse impact on felons. Okay? That's their opinion. Now, you're not pointing me to a case or an action against the state of Texas. This is, I guess I don't understand, what if they sue you and to do that, they're going to have to go to the Attorney General and get permission to sue the state, okay. But even if they do that, you still, then you'll have a case and you can argue your point. But what? I have a hard time with your standing here. This is precisely like, for instance, Barrick or the Seventh Circuit San Blanc decision in Atchison, where the agency announces a new view of the law, makes clear that its agents are supposed to enforce it in the field, and the harm to the regulated entities is the heightened risk of enforcement action. I mean, you don't have a question of standing here because under the APA, I mean, all you've got to show is that it is a final action with legal consequences. Is that correct? That is correct. Okay. And so if it has legal consequences, I mean, even if it's potential legal consequences that have never come to fruition, do you still have the right to challenge that regulation? We think we do. What do you mean you think you do? What do the cases say, not what you think? That is what the cases say. For instance, that was the— Well, just the principle of law, that's my point. I agree with it, with my colleague. But we just don't have anything other than this is a viewpoint that they have. Fine. They've got a lot of viewpoints, and time to time it changes. But they—I guess it's not a substantive rule. They can't adopt that. They have to persuade a court that that was an enforcement problem. I guess I— Well, Your Honor, we submit that it is a substantive rule, merely one that they enacted without the authority— So how are you hurt? How is the state, quasi-state, injured? Well, in addition to the fact that we face the heightened risk of enforcement, Your Honor, there's also the unique aspect of this case, which is that it—for the first time, this rule purports to preempt contrary state laws. So the EEOC has taken the position in this rule, the very aggressive position, in our view— How could they do that? How could this rule preempt state law? Well, we— If it's not a substantive rule principle, how does it do that? We agree that they don't have authority to do so, but they not only purport to do so in the rule, but they also have instructed their agents to enforce the rule accordingly. For instance, they have the example in the rule of a county, and all that the county does is it enforces a state law against hiring criminals. And so then they instruct the enforcement personnel to investigate that county and conclude that there's reasonable cause to believe that it violated Title VII, which in turn triggers the conciliation process. It triggers the referral to the DOJ. It triggers the entire coercive apparatus. And another element of this rule that, again, uniquely creates legal consequences, we would say, Your Honor, is that it contains safe harbors. So it provides two circumstances in which the EEOC says very clearly that if you comply with one of these two approaches, then we believe that you will consistently meet Title VII. And there's a number of cases, for instance, the D.C. Circuit's opinion in Cohen, and equally actually the Ninth Circuit opinion in Fairbanks, which the EEOC relies heavily on. And what those opinions say is that when an agency creates a norm for regulated entities to follow, even if it's not a substantive rule that has the force of law or traditional legislative rule, by creating this new norm and expecting regulated entities to follow it, you have committed final agency action. JUSTICE KENNEDY I still don't see how you get around the D.C. Circuit's cases like the EEOC v. AT&T. I mean, that was a published manual they were talking about, a compliance manual. And the Court said because the EEOC can't sue, it doesn't have any legal consequences. I mean, how do you get around that? MR. And it distinguished it. It said it so happens that in this case, the rule does not have an impact on regulated industry and does not create a new norm for the regulated industry. But it completely accepted the principle of Barrick and Appalachian Power and all of those cases which state that if you are creating a norm and you expect your agents to follow it and you expect the regulated entities to adhere to it, then there is a final agency  JUSTICE KENNEDY But the point is, they can't enforce it. MR. ANDERSON Yes, they can. JUSTICE KENNEDY Well, they can refer it to the Attorney General. He may or may not enforce it. MR. ANDERSON Well, you know, that precise argument was actually made in Abbott Labs v. Gardner. There too, the agency did not have enforcement power, but the Department of Justice did. JUSTICE KENNEDY Are you conceding that the fact that the agency can go in and enforce a subpoena against the State of Texas does not constitute legal consequences? Is that what you're saying? That's not legal consequences? MR. ANDERSON That certainly would be a legal consequence, Your Honor. And one more point. JUSTICE KENNEDY So, I mean, they don't have to have the enforcement of the merits to have legal consequences. It means that they can go into the Federal District Courts of the State of Texas. They can enforce a subpoena. They can force you to deliver all the records that they want that are relevant that the courts are willing to order you to produce. Then they can investigate on the basis of those records, and then they can order you to conciliate on the basis of those records. Now, is that legal consequences or not?  ANDERSON That is legal consequences. JUSTICE KENNEDY Did you argue that in your brief? MR. ANDERSON We did not make that argument in the brief, Your Honor. But also, another extremely significant point is that we actually have post-enactment evidence here. We discussed in our briefs an exchange of letters between a lawyer for a regulated entity and an investigator for the EEOC. And the lawyer for the regulated entity said, you should not make an adverse finding against us simply because we did not adhere to the rule. After all, you said in your litigation with Texas that this rule is not binding. What I want you to try to explain to me, though, is how do you distinguish this case from our Belco case and the Court of Engineers when they said that the mere fact that an agency has said we have jurisdiction over you is not a legal consequence? MR. ANDERSON Your Honor, we think the case is not. JUSTICE KENNEDY And that's what they are saying here. We have jurisdiction over you by virtue of this policy that we have said that you will be investigated for if it has a disparate impact on minorities and cannot be justified as a business reason, we're coming into court to get you. That's what they said. MR. ANDERSON Right. And so cases like Belco and Luminance and Fairbanks, they all involve these sort of one-off decisions by agencies. JUSTICE KENNEDY What is one-off? MR. ANDERSON It's simply in the course of a single investigation. In Belco, it was actually invited by the regulated entity. The regulated entity asked for the determination. JUSTICE KENNEDY Why is that a distinction with any kind of substantial difference? MR. ANDERSON Because the cases that we rely on, like Barrick, they concern whether or not a purported guidance is really similar to a legislative rule, again, because it creates a norm both for the agents to follow and for the regulated entities to follow. And just to return to the exchange between the regulated entity and the investigator, the investigator said, it would not be wise for you to ignore the rule. And that means that the agency is treating it as a rule that they expect entities to follow. And that is extremely significant. JUSTICE KENNEDY Let me direct your attention to AT&T versus EEOC, opinioned by Justice Ginsburg with Judges Edward and Sentel. The EEOC, in that case, had issued a policy stance there regarding in its internal compliance manual, and also with regard to employer, it issued a, quote, letter of determination that, in its view, the employer, second employer, had unlawfully discriminated against two employees, urged them to conciliate with employees, indicated it would refer the matter to its legal department if conciliation failed, and later notified the employer of its conclusion that conciliation had failed. Then the employer sued for declaratory judgment before the EEOC brought suit. The Court said that this is overbroad, that the argument that the EEOC took final action when it embraced one view of the law and rejects another. They said the EEOC had not inflicted any injury on the employer merely by expressing its view of the law. A view that has force only, and I'm quoting, to the extent the agency can persuade a court in the same conclusion. Now, how do you distinguish that? There was a letter of determination issue. We're going to sue you. And the employer said, jumped ahead, we're going to file a declaratory, sue for declaratory judgment. The Court said no. This is all they did was state a proposition of law. It's not final agency action. Your Honor, another point that the Court made in AT&T. Not the other point. What is it? Answer me. They're wrong. Just say they're wrong. Well, they accept Appalachian power. They said whatever else can be said about the actions of the agency in AT&T, the Court concluded they did not affect any other party other than AT&T. Well, what case do you have that gives you standing to sue for a statement of law by a regulator? Well, that's not our basis for suing. Our basis for suing is that the EEOC has improperly promulgated a substantive rule, which they enforced as a rule. Okay. In other words, if we say this, how can it issue a substantive rule when the law prohibits it from doing so? Well, that's one of our claims. One of our claims is that... Well, this is not a... Your Honor. If you say this, if your case stands on whether this is a substantive rule, I understand that argument. I'm not persuaded by it, but... Agencies improperly issue substantive rules without notice and comment, and in excess of their authority... But is that the State's argument that that's a substantive rule? That is our argument, and our argument is also that they have both created a norm that they expect regulated entities and their own employees to follow, and they have acted like that. And I will reserve the rest of my time for rebuttal. I want to ask you one question. If an employee of the State of Texas, say a convicted felon, applies for a job and is rejected, his application is rejected, and he sues whatever agency didn't hire him, would that employee be able to use this EEOC guidance rule? Would it have any effect on the outcome of the private litigation? Well, the employee would have to go through the EEOC process. I assume he does all that. Well, the EEOC certainly would, at a minimum, request skidmore deference, and that's something that had been denied to their compliance manual in the past, and the very reason that they issued this rule is in order to provide additional legal and factual analysis in order to have a greater chance of having courts defer to it. Okay. Thank you, Mr. Potapoff. And you have saved some time for rebuttal. Ms. Marcus, we'll hear from you, please. Thank you. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent the defendants at police. Here, the district court correctly dismissed Texas's challenge to the EEOC. Let me ask you just to start out, to get the standard of review, what we're talking about here. The standard standing in the Article 3 or Controversy 3, not even Article 3, but just in the Controversy between the parties, is not at issue in this case? Yes, it is at issue. Okay. Now, how is it at issue? As I understand, tell me I'm wrong, because I could be very wrong, but as I understand, the standard that we determine whether we can review this particular rule is whether it has legal consequences. And if it has legal consequences, then you don't have to have an actual controversy, you don't have to have an immediate dispute, no threat of controversy, or any other aspect that you usually ascribe to standing. Is that correct or incorrect? I think, I believe Your Honor is talking about all the APA cases cited by Texas. I'm talking about my question. I'm talking about my question. Yeah. That is correct, but it does not apply here, and that's exactly why standing is an issue here, because there are no legal consequences. That's why the final agency action question is logically . . . In other words, what I'm trying to get is the standard of view. How do we judge this case? We're not standing, and you've answered it, you said it, we're not doing it on the traditional standing, actual controversy basis. What we're doing on is to determine whether this rule has legal consequences, whether it's a final rule within the agency, and it has legal consequences. Is that basically what we're trying to determine? Well, Your Honor, we think that is sufficient to affirm the district court, and that is the logically antecedent question here, and is also dispositive on standing. However, we note that you need, in the Article 3 sense, there has to be an injury in fact. When you're a regulated party, under a rule that has legal consequences, normally there would be, but here there are no legal consequences, and Texas has not shown any current enforcement by the Department of Justice, any imminent enforcement, so there are just the standing . . . We certainly are also talking about standing in the Article 3. Again, I'm sorry and I apologize, but I'm trying to get this straight. When you're dealing with APA, obviously you've got to have standing to have some kind of controversy, but does APA create the controversy by the state of Texas here presenting the wrong controversy, and it has legal consequences on us? If they can prove that, have they satisfied being in court? If they could prove that this was a substantive rule that had legal . . . No, I . . . . . . current legal consequences on them, then yes, but they can't . . . they cannot prove that. Okay. I'm going to let you have your argument. I'm sorry. Okay. So they . . . the guidance here is just that. It's guidance. It is not a rule. It imposes no legal obligations. It imposes no legal requirements on employers. It is simply providing the EEOC's views on interpretation of Title 7 with respect to employers' use of criminal history records. Okay. Let me ask you this. Would potential legal consequences, if they're threatened with legal consequences, is that enough, a real threat? Your Honor, they couldn't be here because the only consequences here would be from Title 7 itself. Title 7 has prohibited disparate impact discrimination from the very beginning, from the time that it was extended to the states, and that's where any hypothetical future action against a state would be under Title 7 and would be in a de novo action in court under Title 7. It wouldn't . . . the guidance can't possibly impose any legal consequences. Okay. Let me ask you this, along the lines that Judge Davis asked earlier. Assuming that a felon was denied a job by some Texas agency that had the no felony rule, filed an EEOC charge, with the EEOC's guidance, it tells their investigators to go out and investigate, and that if it does have a disparate impact, that it is a violation of Title 7, what would the agent in the field do with that charge against the state of Texas? The EEOC would be obligated to do the investigation under Title 7 itself. Exactly. And it would . . . the guidance didn't change anything in that respect. The guidance actually was just consolidating and updating prior policy guidance by the EEOC, and so under the statute itself, the EEOC does an investigation, and if it finds reasonable cause to believe a violation has occurred, it then engages in conciliation. But that's under Title 7 itself, and the guidelines, they are there just to make the agency more transparent, so employers will know the agency's views. It does . . . it can help agency employees know how to approach these in an investigation, but it's Title 7 that imposes the legal consequence if an employee files a charge. The law . . . and in fact, in the example cited by Texas in its brief of a state employee who did bring a charge, the EEOC did not find reason to believe that a violation had occurred. It said it was unable to determine that, and it's Title 7 itself that requires the EEOC to issue a right-to-sue letter in that situation. So, even where the EEOC affirmatively finds that there isn't reason to believe there's a violation, it needs to give the employee a right-to-sue letter, and the employee would nonetheless have the right to proceed to court. But then in court, the action would be de novo, and if the employee relies on the guidance or cites the guidance, the court would only be giving it more deference due to . . . Isn't that a leg up for the plaintiff, though? It only . . . Your Honor, I think if you just look at the Supreme Court's decisions and, you know, in fact, a recent one which is the same underlying statute that was at issue in AT&T versus EEOC, the Pregnancy Discrimination Act, the court refused to give the EEOC guidelines in that case to get more deference. Well, I mean, other courts have. Other courts have certain . . . Oh, yes, and the Supreme Court has sometimes, too, but it's just . . . it is . . . that is not a legal consequence, as even in a case . . . this is further removed than AT&T versus EEOC, because in that case, the compliance manual had actually stated that policies like AT&T violated the law. Here, the guidance doesn't say that any of Texas's policies have violated Title 7. In that case, the agency had actually issued letters to employees saying that they thought that AT&T's policy violated the law. I mean, if a plaintiff whose application was rejected had a jury, and I don't know if you'd ever get a jury against a state, maybe you would, the judge would have to give a charge on skid more deference, wouldn't he? That would be something the plaintiff would be very favorably disposed to. Your Honor, my . . . I would think that as a legal question, that probably would be argued in the jury instructions, but, you know, in terms of what . . . because the judge would usually give jury instructions. Oh, sure. I mean, but I don't know how I could avoid not saying something about the rule and, you know, if I tell the jury this is what the EEOC says about it, and if it's persuaded, if you ought to consider it, I think that would be . . . Let me ask you a question. Suppose the antitrust division, Department of Justice, has a new head with a new administration, and it announces that henceforth we're going to put teeth in Section 2 of the Sherman Act, and we're going after monopolization, and these are our indexes, et cetera. And there are two companies out there that are talking about merging and so forth, and they said, well, you know, we're not going to wait until they sue us. Can they sue? No, Your Honor. I think that would just be a matter . . . the way you pose your hypothetical, I think that would just be a matter of enforcement of discretion. So unless . . . Because . . . But unless . . . unless this statement is a substantive rule, then what's the difference between no sue and where we are? Well, I don't think either way the . . . it could be challenged in court with just a statement  Well, regardless of Article . . . . . . and say we're going to put more teeth . . . Article 3 standing, what in Lujan itself, which was an Endangered Species Act, which changed the procedural process by review to delete the foreign exposure itself, the constitutional limitation was on the power of Congress at all to do this, through the EPA or anything else, or through the act of Congress itself to create standing. Correct? I thought that's where our seminal case really now is, Justice Scalia's opinion in Lujan. Well, I think, Your Honor, that there in the cases that Texas is relying on, you have an agency that has been granted authority by Congress . . . Yes. . . . to promulgate substantive rules, and that the agency itself . . . Well, they maintain this is substantive. Now, I understand if it's a substantive rule, it's something else, but my question . . . to address the question, is it a substantive rule or not? It's substantive in the sense that it controls the actions of any of the regulated parties here. No, it does not control the actions of any regulated parties. If you look at the guidance, there's nothing in there that provides directives to employers that they have to have certain policies or can't have other policies. It is just interpreting the underlying Title VII provisions, and . . . I want to focus on the administrative processes where administrative agencies issue internal directives to staff, whether it's the SEC, it's the Antitrust Division, or it's the EEOC, or any of the departments of the government itself or the administrative agencies themselves, and so henceforth our policies as to how we're going to proceed. The people out there are very interested in that, but that's just their view of the law. Well, it's different in a case, for example, in Appalachian Power, where the EPA was there. It was also called guidance, but the reason the D.C. Circuit itself distinguished between the EPA and its guidance said it will insist that state and local authorities comply in setting the terms and conditions of permits. So, that actually is a new norm, and it's binding in future permit applications. There's nothing analogous in this guidance. But the relevant point is that the agency hasn't taken a final action in the sense that it has a rule that binds. There's a distinction between that and expressing its view of what they like to have. I read this as being very much a carefully constructed statement of policy that's intended to avoid trying to go as far as it can go without creating a subsidy rule. Well, this Court, I think its decision in Luminant is very instructive. In Luminant and in People's National Bank, the Court has noted that what the agency has done is not setting any new norms or providing any new requirements, and where the legal requirements come from is the underlying law, but just to state the agency's view of what the law is, is not final agency action, and because it does not satisfy the second prong of the Bennett v. Speer test, because it doesn't have legal consequences. And here, it's even clearer because the EEOC cannot, doesn't have authority to bring an enforcement action against a state. And even the Texas, in its argument, was citing the provision saying the guidance was purporting to preempt state law. It does nothing of the sort. It's, it actually, if you look, and in our brief, we cite that provision in full. If you look at the EEOC website, it quotes Title VII itself, 42 U.S.C. 2000E7. It, the website cites the relevant provision, and that's what it's saying would preempt a contrary state law. So, it's not, the guidance isn't purporting to do that itself. It's, it's just citing the provision of Title VII that does so. So, if there are no further questions, we ask that the Court affirm the District Court on any or all of the grounds that it dismiss the case. Thank you, Ms. Marcus. Mr. Parva, we're going to hear from you. We've got a little time for rebuttal here. May it please the Court, the EEOC concedes the basic principle of law that we're asking for here, which is that if the, if the agency insists on compliance with its regulation, then it is a final agency action, regardless of whether or not it would, formally speaking, have the force of law. So, the question is, is this a case, like Appalachian Power, in which the EEOC will insist on compliance with this rule? And there's a number of reasons to think that the answer is yes. One, which the EEOC still has not addressed, either at oral argument or in their briefing, is that we literally have an example of one of their enforcement personnel demanding that a regulated entity comply with the rule. And they actually... What relief do you seek in this case? I'm sorry? What relief does the state of Texas seek here? Well, we have brought facial challenges to the rule. So, for instance, we have suggested that the rule is a substantive rule that the EEOC had no authority to issue, and so the relief would be to strike down the rule in its entirety. Your whole relief is structured as to whether this is a substantive rule or not. That's merely one of our claims. Another one of our claims is that it inappropriately purports to preempt our law. And so the relief for that would be to strike it down to the extent that it purports to do that. And our third claim is that it inappropriately purports to abrogate our sovereign immunity. And so the relief for that would be to strike it down to that extent. Another... How does it preempt if it's not part of Title VII? Well, so this is very interesting, Your Honor, because... It sure is. In order to apply it against the state of Texas, it would have to have been clearly stated before you'll even reach the question of whether the Congress under the 14th Amendment could preempt it. So this rule says flatly that facially neutral state laws against hiring criminals are not a shield against Title VII liability. And that is precisely the opposite of the position that the United States took in the Supreme Court just seven years ago in the Galeno-Amicus brief. And there they said that there's no support for that position in the text of Title VII. They said that it completely vitiates the business necessity defense because, of course, it is a business necessity for a business to comply with state laws. And that it puts employers in the impossible position of having to decide whether to follow state law or whether to follow the EOC's interpretation of federal law. And so when you have an agency that takes this radical new position, announces it with the force of law, demands that regulated entities follow it, that is a paradigmatic example of final agency action. In addition, my friend insists that there is no mandatory language in the rule. In fact, we've cited many examples of mandatory languages, of requirements that it purports to impose both on the EOC's agents and on the state. So, for instance, it says that in order to prove business necessity, an employer must show a specific link between a given crime and then the given job and the dangers of working in that given job. So what that means is all of our policies, which are sort of blanket refusals to hire criminals for certain sensitive areas of government, they're all inconsistent with that. So now we're having to face potential enforcement from the DOJ with respect to a wide range of our laws. And so that's putting us on the horns of a compliance dilemma that has created standing ripeness and final agency action for decades, Your Honor. And we would also say that, again, they have not addressed the safe harbor point. In Cohen, the DC Circuit pointed out that if you give the regulated entities a norm to follow, if you say, just do these things and there will be no enforcement against you, that is a mark of final agency action. And it's essentially uncontested that this rule does that. It says, you know, if you have a targeted screen that is followed by an individualized assessment, that is safe. And so that is clearly an attempt to influence the behavior of regulated entities and that also makes it a final agency action. So, in short, the rule of law is, does the agency have the expectation that regulated parties will conform to and rely on the regulation? That is from the DC Circuit opinion in Sibba-Geigy. And I think it's clear for a variety of reasons that the EEOC does have that expectation in this case. So we would ask that the lower court decision be reversed. Do you think the rule is, as your opponent says, you must show a current, at least a current threat of legal consequences? We disagree with that. We think it merely has to be reasonable to expect that there will be a threat of legal consequences. You have to show more than a theoretical threat. Sure, but we think that this is very real here. Because, first of all, again, we have an example of agency personnel threatening regulated entities for not complying with the rule. And we also think it's very clear that our sort of blanket policies against hiring criminals in a variety of state agencies are inconsistent with... So you're conceding that with respect to an APA claim that the usual stand-in requirement is necessary to the extent that there must be a concrete threat of enforcement? No, there must simply be legal consequences. And legal consequences can come in a variety of forms, Your Honor. Okay. Thank you.